```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF PUERTO RICO
```

LUIS MANUEL GONZÁLEZ-NIEVES,

    Claimant,

    v.

MICHAEL S. ASTRUE,

    Respondent.

Civil No. 08-2015 (JAF)

**OPINION AND ORDER**

Claimant, Luis Manuel González-Nieves, pro se, petitions this court under 42 U.S.C. § 405(g) to review the decision of Respondent, Commissioner of Social Security Michael S. Astrue ("Commissioner"), denying Claimant's application for disability benefits. (Docket No. 2.) Commissioner filed a memorandum defending his determination (Docket No. 15); Claimant never replied, despite our July 20, 2009, deadline to do so (see Docket No. 14).

**I.**

**Factual and Procedural History**

We derive the following facts from the parties' filings (Docket Nos. 2; 11; 15) and the record in this case ("R.") (Docket No. 10). Claimant was born on September 10, 1973. (R. at 65.) He completed the ninth grade. (R. at 30, 41.) He worked in construction for various employers and in various positions from 1993 to 2003. (R. at 41, 86.) He reports that his disabling condition began March 30, 2002. (R. at 65.) He also reports having worked for one

Civil No. 08-2015 (JAF)                                                                                                          -2-

month in 2003, helping to make sidewalks for Manatí Public Works, before he stopped due to his visual impairment.[1] (R. at 67, 86.) Claimant applied for Social Security benefits on April 26, 2004. (R. at 16, 65.) His coverage for social security benefits expired on March 31, 2006. (R. at 75.)

On September 7, 2004, Commissioner determined that Claimant was not disabled and, accordingly, was not entitled to disability benefits under the Social Security Act. (R. at 52-54.) On October 6, 2004, Claimant requested reconsideration of the determination. (R. at 55.) Commissioner obliged and, on March 21, 2005, affirmed the earlier denial. (R. at 60-62.)

On April 7, 2005, Claimant requested an administrative hearing before an administrative law judge ("ALJ") (R. at 63), which took place before ALJ Soloman Goldman on June 6, 2007 (R. at 26). Claimant attended the hearing with counsel and testified regarding his alleged disability. (R. at 26-38.) A vocational expert, Luis Serrano Vega, also testified at Claimant's hearing. (R. at 39-46.) He opined that Claimant is unable to perform his past work but that he can perform less physically-demanding jobs available in substantial numbers in various industries. (R. at 43.) When asked by Claimant's counsel, Vega opined that if Claimant actually suffers from the level of physical impairment to which Claimant attests, Claimant "would have severe limitation to get involved in any work activity in a sustained manner." (R. at 46.)

---

[1] The ALJ, however, affirmatively found that Claimant did not engage in substantial gainful activity between the dates of March 30, 2002, and March 31, 2006. (R. at 18.)

Also before the ALJ was the record showing Claimant's history of physical and mental impairment, namely a visual impairment, a fractured femur, lumbar pain, and depression. Claimant suffered trauma to his left eye at the age of nine; the cornea of his left eye remains opaque, resulting in poor vision in that eye. (R. at 32, 41, 169.) In 1998, Claimant suffered a fractured femur during a car accident, resulting in residual pain and a limp in his left leg. (R. at 32-33, 159, 165.) He also suffers from degenerative disc disease, resulting in radiating lumbar pain and nerve root compression. (R. at 160, 239.) Finally, Claimant receives treatment for depression. (R. at 269-303.)

According to the medical reports in the record regarding the relevant time period, Claimant received regular treatment at Morovis Medical Center, where he complained of back and leg pain and irritation in his eyes. (R. at 206-61 (reports dated December 2003 through March 2006).) Said reports include intake evaluations, radiology requests, specialist referral forms, and lists of Claimant's medications. (Id.) Reported there are Claimant's complaints of pain and other symptoms (id.), all of which are also documented elsewhere in the record.

Claimant also submitted two visual impairment reports from an examining opthamologist, Dr. José Colón-Vaquer, dated May 3 and December 15, 2004. (R. at 151-58.) Both record normal vision in the right eye but extremely impaired vision in the left. On August 4, 2004, Claimant was examined by an orthopedic surgeon, Dr. César Cintrón-Valle, whose final diagnosis showed lost vision in Claimant's left eye and a "completely consolidated" fracture in his left femur. (R. at 129-39.) On August 27, 2004, having reviewed Claimant's medical

Civil No. 08-2015 (JAF)                                                                                          -4-

records, an internist, Dr. Rodríguez–de la Obra,[2] completed a physical residual functional capacity assessment, which found Claimant, inter alia, limited in his ability to lift, crouch, crawl, and climb and which recommended that Claimant avoid even moderate exposure to hazards, due to Claimant's fractured femur and visual impairment. (See R. at 141-48.)

On November 23, 2004, the Puerto Rico Family Department evaluated Claimant and diagnosed him with degenerative disc disease. (R. at 149-50.) On February 24, 2005, Claimant was examined by neurologist Dr. Zaida Boria and by radiologist Dr. Eduardo J. Medina–de la Baume. (R. at 159-68.) The results of those examinations reveal, inter alia, degenerative disc disease, impaired vision in the left eye but normal vision in the right, normal motor and sensory functions, normal reflexes, and a negative straight-leg raising test. (Id.) On February 28, 2005, Claimant was again evaluated by an ophthalmologist, Dr. Juan Nevarez, who reported normal function of the right eye but poor prognosis for the left and recommended that Claimant "avoid activities requiring excellent stereopsis bilateral vision and full visual fields." (R. at 169-71.) And on March 15, 2005, an internist, Dr. Magda I. Rodríguez-Colón, completed a second physical residual functional capacity assessment, which records Claimant's limitations as to, inter alia, lifting, climbing, stooping, crouching, and vision. (See R. at 172-80.)

Finally, Claimant submitted records of his treatment for depression, most of which postdate the expiration of his eligibility for social-security benefits. (See R. at 269-303.) On

---

[2] Dr. Rodríguez–de la Obra's first name is illegible on the medical record. (See R. at 148.)

those records within the relevant time period, Claimant was diagnosed as depressed but logical, coherent, and oriented; they contain no evidence of his mental impairment's effect on his relevant work functions. (See R. at 294-303.)

The ALJ issued his decision denying Claimant disability benefits on July 27, 2007. (R. at 10-23.) He found, inter alia, that Claimant has a severe impairment in that he suffers from a left femur fracture, left eye traumatic cornel opacification, left eye glaucoma, and lumbar pain; that Claimant does not have an impairment or combination of impairments that meets or medically equals a listed impairment, discussed below; that Claimant has the residual functional capacity ("RFC") to perform medium work, though with some additional limitations, discussed below; and, finally, that Claimant is not disabled, as defined by the Social Security Act. (R. at 16-23.) In his written opinion, the ALJ surveyed Claimant's relevant medical history to assess and apply Claimant's RFC. (R. at 18-23).

On August 23, 2007, Claimant sought review of the ALJ's decision from the Appeals Council (R. at 9), which denied review on July 9, 2008 (R. at 5-8). On September 9, 2008, Claimant filed the present petition in this court seeking review of the ALJ's decision. (Docket No. 2.) Claimant never filed a memorandum of law, and Commissioner filed a memorandum of law on May 29, 2009 (Docket No. 15).

## II.

## **Standard of Review**

An individual is disabled under the Social Security Act ("the Act") if he is unable to do his prior work or, "considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d). The Act provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda-Ortíz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted) (quoting Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

We must uphold Commissioner's decision if we determine that substantial evidence supports the ALJ's findings, even if we would have reached a different conclusion had we reviewed the evidence de novo. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). In reviewing a denial of benefits, the ALJ must consider all evidence in the record. 20 C.F.R. § 404.1520(a)(3) (2009). Credibility and "[c]onflicts in the evidence are . . . for the [ALJ] - rather than the courts - to resolve." Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987). We reverse the ALJ only if we find that he derived his decision "by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

### III.

### Analysis

Claimant does not detail the alleged shortcomings of Commissioner's decision but claims generally that "medically determinable physical impairments" entitle him to disability benefits under the Act. (Docket No. 2.) Because Claimant excludes from that general claim Commissioner's decision regarding Claimant's mental impairment (see id.), we need not review it.[3] In addition, without guidance from Claimant regarding the specific nature of Commissioner's error, we confine our review to the ALJ's determinations that were unfavorable to Claimant. Thus, we review the ALJ's finding that (1) Claimant's combination of impairments neither meets nor medically equals a listed impairment (R. at 19); and (2) Claimant, though unable to perform his past relevant work, has the RFC to hold jobs that exist in significant numbers in the national economy (R. at 19-23).

**A. Impairments Neither Meet Nor Equal a Listed Impairment**

Once the ALJ determined that Claimant's physical impairments are severe, he had to consider whether they, separately or combined, met or equaled a listed medical impairment, see 20 C.F.R. §§ 404.1520(c)-(d), .1525, .1526. The ALJ concluded that they did not. (R. at 19.)

---

[3] To the extent that Claimant meant to plead error in Commissioner's mental-impairment determination, we are satisfied that substantial evidence supported the ALJ's decision. The few medical records on file regarding Claimant's mental health during the relevant time period show consistent adequacy regarding relevant mental functions (see R. at 294-303), and this supports the ALJ's ratings regarding Claimant's functional-capacity limitations—"mild" in three categories and "none" in the fourth and final (R. at 19). With those ratings, the ALJ could properly deem Claimant's mental impairment non-severe, see 20 C.F.R. § 404.1520a(d)(1), and deny his claim for disability benefits based on said impairment.

1   We review the record medical evidence to determine whether substantial evidence supports the
2   ALJ's conclusion.

3   We first compare Claimant's visual impairment to those listed in the Code of Federal
4   Regulations ("Code").  See 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, 2.02 (loss of visual acuity);
5   id. at 2.03 (contraction of the visual field in the better eye); id. at 2.04 (loss of visual efficiency).
6   Each of the listed visual impairments contemplates an impairment of the better eye, to varying
7   effect.  Upon review of the record medical evidence regarding Claimant's visual impairment, we
8   find that he suffers from no such impairment of his better eye.  (See, e.g., R. at 151-58; 169-71.)
9   There is scant evidence of abnormality in his better eye (see R. at 176 (noting decreased visual
10  field in Claimant's right eye, given "widest diameter near 54 degree but with reduced upper
11  field")) and nothing that amounts to any abnormality listed in the Code.  Nor is there any
12  evidence that Claimant's visual impairment medically equals the symptoms described in the
13  relevant listings.  See 20 C.F.R. § 404.1526(b)(1).  We conclude that substantial evidence exists
14  to support the ALJ's determination that Claimant's visual impairment neither meets nor equals
15  a listed visual impairment.

16  We next consider Claimant's musculoskeletal impairments, those of his femur and spine.
17  While the Code's relevant listed impairment includes a fractured femur, see 20 C.F.R. pt. 404,
18  subpt. P, app. 1, pt. A, 1.06, a claimant's impairment will not meet said listing unless
19  accompanied by an "[i]nability to ambulate effectively," id., which the Code defines generally
20  as the inability to walk "without the use of a hand-held assistive device," id. at 1.00B2b.

Though the record reveals that Claimant walked with a limp, favoring his left leg (see R. at 165), there is no evidence that he was unable to ambulate effectively, as defined in the Code. Nor is there any evidence that Claimant's fractured femur medically equals the symptoms described in the relevant listing. See 20 C.F.R. § 404.1526(b)(1). We, thus, conclude that substantial evidence supports the ALJ's determination that Claimant's fractured femur neither meets nor equals the listed impairment regarding fractured femurs.

As to Claimant's spinal impairment, we look to the Code's listing of spinal disorders, 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, 1.04. Said listing requires that a claimant display an enumerated spinal disorder, one of which is degenerative disc disease, plus (1) evidence of nerve root compression accompanied by sensory or reflex loss and, if the lower back is involved, a positive straight-leg raising ("SLR") test, id. at 1.04A; (2) spinal arachnoiditis, id. at 1.04B; or (3) lumbar spinal stenosis resulting in the inability to ambulate effectively, id. at 1.04C. The record shows that Claimant suffers from degenerative disc disease but, as just discussed, contains no evidence that Claimant was unable to ambulate effectively, nor does it contain any evidence of spinal arachnoiditis. As to the only remaining listing, section 1.04A, we find that Claimant did adduce evidence of nerve root compression (R. at 239) but that the only SLR test in the record was negative (R. at 161). There is no evidence that Claimant's spinal impairment, nevertheless, medically equals the symptoms described in the relevant listings. See 20 C.F.R. § 404.1526(b)(1). Thus, we conclude that substantial evidence supports the ALJ's determination that Claimant's spinal impairment neither meets nor equals a listed spinal impairment.

Having searched the listed impairments, and based on our review of the record, we also find that substantial evidence supports the ALJ's determination that no other listed impairment is closely analogous to any one or combination of Claimant's impairments. See § 404.1526(b)(2)-(3).

**B.    Residual Functional Capacity to Hold Other Employment**

To conclude, finally, that Claimant is not disabled, the ALJ first had to assess Claimant's RFC and then use that assessment to determine whether Claimant could perform his past relevant work or, if not, nevertheless adjust to other work. See 20 C.F.R. §§ 404.1520(e), .1545, .1560-.1569a. Section 404.1545 guides the ALJ's assessment of RFC, which is defined as "the most [one] can do despite [one's] limitations." § 404.1545(a)(1). The ALJ must use "all of the relevant medical and other evidence" to assess RFC. § 404.1545(a)(3). Section 404.1529 guides the ALJ's evaluation of symptoms and their effect on a claimant's capacity for work. See, e.g., § 404.1529(c), (d)(4).

The ALJ found that Claimant has the RFC "to perform medium work except . . . is limited to climbing, stooping and crouching only occasionally" and must "avoid even moderate exposure to hazards and avoid work that requires perfect steropsis [sic], binocular vision or perfect upper visual fields." (R. at 19.) In so finding, the ALJ considered Claimant's symptoms, noting that the "objective evidence of record establishe[s] the presence of medical impairments . . . but not to the extent claimed." (R. at 21.)

Section 404.1567(c) defines "medium work" as the ability to "frequently" lift or carry objects weighing up to twenty-five pounds but to lift no more than fifty pounds. Dr. Boria reported that Claimant is unable to lift objects weighing thirty pounds or more (R. at 162), but Drs. Rodríguez–de la Obra and Rodríguez-Colón both concluded that Claimant can perform medium work, as defined under § 404.1567(c) (see R. at 142, 174). We find that substantial evidence supports the ALJ's determination that Claimant can perform medium work. (See R. at 21 (noting Claimant's response to prescribed treatment and his absence of persistent musculoskeletal pathology as corroboration for said determination).)

We also find that the other limiting factors the ALJ identified are supported by substantial evidence. (See, e.g., R. at 141-48, 173-80.) Claimant indicates no other limiting factors the ALJ overlooked (Docket No. 2), and our review of the record similarly reveals no further limiting factors. We thus find the ALJ's finding as to Claimant's RFC on the whole supported by substantial evidence.

Next, the ALJ must determine whether the claimant, given his particular RFC, can perform past relevant work. See §§ 404.1520(f), .1560(b). A vocational expert may be used to aid this determination. § 404.1560(b)(2). The ALJ found Claimant unable to perform his past relevant work, given Claimant's RFC to perform "a narrow range of medium work." (R. at 22.) Claimant does not dispute this finding (Docket No. 2), and we find it supported by substantial evidence (see, e.g., R. at 40-43).

Civil No. 08-2015 (JAF)                                                                                                              -12-

Finally, if the ALJ finds that the claimant's RFC precludes his return to past relevant work, the ALJ must then determine whether said RFC, nevertheless, permits other work that exists in substantial numbers in the national economy. See §§ 404.1520(g), .1545(a)(5)(ii); see also §§ 404.1560-.1569a (guidelines for assessing vocationally relevant factors such as age, education, work experience, and work availability); 20 C.F.R. pt. 404, subpt. P, app. 2 ("Medical Vocational Guidelines"); id. § 203.00 (framework for decisions involving a sustained work capability limited to medium work). With reference to both the framework provided by the Medical Vocational Guidelines and the vocational expert's testimony, the ALJ determined that Claimant is "capable of making a successful adjustment to other work that exist[s] in significant numbers in the national economy." (R. at 22-23.) Upon review of the record, we find that substantial evidence supports this determination (see, e.g., R. at 43) and, thus, uphold the ALJ's attendant conclusion that Claimant is not disabled.

### III.

### Conclusion

In view of the foregoing, we hereby **AFFIRM** Commissioner's determination. We **DENY** Claimant's petition (Docket No. 2) and **DISMISS WITH PREJUDICE** all claims therein.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 18th day of February, 2010.

                                                                               s/José Antonio Fusté
                                                                               JOSE ANTONIO FUSTE
                                                                               Chief U.S. District Judge